# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

NUSBAUM & PARRINO, P.C.,

        Plaintiff,

  v.

MARIA DOLORES COLLAZO DE COLON
and JUAN COLON-PAGAN,

        Defendants.

3:08-cv-1866 (CSH)

**MEMORANDUM OPINION AND
ORDER**

HAIGHT, Senior District Judge:

      Plaintiff Nusbaum & Parrino, P.C., initiated this action for attachment and orders *pendente lite* against defendants Maria Dolores Collazo de Colon and Juan Colon-Pagan. Defendants, residents of Puerto Rico, have moved to dismiss on the grounds that the Court lacks personal jurisdiction over them.

## I.     BACKGROUND

      Plaintiff Nusbaum & Parrino, P.C. ("Nusbaum & Parrino" or "the firm"), is a law firm located in Connecticut. Defendants Maria Dolores Collazo de Colon ("Maria") and Juan Colon-Pagan ("Juan") are residents of Puerto Rico, whose son, Juan Colon-Collazo ("Colon-Collazo"), is a resident of Connecticut.[1]

      On June 25, 2007, pursuant to a written retainer agreement, Colon-Collazo retained plaintiff to represent him in a divorce proceeding in Connecticut. Both Colon-Collazo and Thomas P. Parrino, Esq. ("Parrino"), a principal with Nusbaum & Parrino, signed the retainer agreement. The following day, defendants added their signatures to the agreement under a paragraph that reads: "WE

---

[1] Colon-Collazo is not a party to this action.

HEREBY IRREVOCABLY AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT INCLUDING, BUT NOT LIMITED TO, MY OBLIGATION TO PAY JUAN COLON-COLLAZO'S LEGAL FEES PURSUANT TO THE PROVISIONS RECITED HEREIN." (Pl.'s Application Attach. Ex. A at 6.)

Around August 28, 2008, Colon-Collazo chose to replace plaintiff as his attorneys. That firm alleges that at that time Colon-Collazo owed it $294,831.87 for legal services rendered and costs incurred. Despite demand, both Colon-Collazo and defendants refused to make payment thereon. On November 6, 2008, pursuant to a provision of the retainer agreement requiring arbitration of any fee disputes, plaintiff commenced an arbitration proceeding against defendants with the American Arbitration Association "to recover the fees due and payable, together with interest and costs in this matter including legal fees." (Pl.'s Application Attach at 4.)

Plaintiff comes before this Court seeking attachment and orders *pendente lite* to protect its prospective award against defendants in the arbitration proceeding, and prejudgment asset disclosure to ascertain what assets defendants have for attachment. Specifically, plaintiff asks the Court to (a) attach sufficient property and assets of defendants to secure the $294,831.87 owed plaintiff, (b) garnish any debt due defendants, (c) attach all bank accounts of defendants, (d) order defendants to provide to the Court and plaintiff a sworn statement setting forth all property, real or personal, in which defendants have an interest, and (e) order defendants to appear in court to be examined under oath concerning any and all property in which they have an interest and any and all debts due and owing. Plaintiffs do so pursuant to Conn. Gen. Stat. § 52-422 and Fed. R. Civ. P. 64. Section 52-422 grants a Connecticut superior court the power to make such orders and direct such proceedings "as may be necessary to protect the rights of the parties [to an arbitration proceeding] pending the

rendering of the award and to secure the satisfaction thereof when rendered and confirmed."[2]  Rule 64, in turn, provides that this Court may grant any remedy that is available under Connecticut state law for seizing a person or property to secure satisfaction of a potential judgment.

Defendants do not dispute this Court's power generally to issue the orders requested by plaintiff.  They do, however, challenge this Court's ability to exercise personal jurisdiction over them.  Defendants argue that plaintiff has failed to allege any facts establishing that they are subject to the Court's jurisdiction under Connecticut's long-arm statute, and also that exercising jurisdiction over defendants would violate due process.  In opposing the motion to dismiss, plaintiff argues that defendants come under Connecticut's long-arm statute because "both Defendants transacted substantial business in Connecticut and hold property interests in Connecticut" (Pl.'s Mem. Law Opp'n Mot. Dismiss at 6), and that the requirements of due process are satisfied as defendants have minimum contacts with Connecticut such that it is reasonable that they be sued here.

## II.    DISCUSSION

In determining personal jurisdiction in a diversity suit, the Court conducts a two-part analysis:  First, the Court determines whether, under the laws of the forum state (here Connecticut), there is jurisdiction over defendants.   Second, the Court determines whether an exercise of jurisdiction under these laws is consistent with federal due process requirements.  *See Grand River Enters. Six Nations, Ltd. V. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005).  "In opposing a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant.  Where a court [has chosen] not to conduct a full-blown

---

[2] This power obtains only to "the superior court for the judicial district in which one of the parties resides, or in a controversy concerning land, for the judicial district in which the land is situated."  Conn. Gen. Stat. § 52-422.

evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Id.* (internal quotation marks omitted) (alteration in original).  The Court must assume the truth of the plaintiff's factual allegations, even in light of contrary allegations by the defendant. *Halo Tech Holdings, Inc. V. Cooper*, No. 3:07-CV-489, 2008 U.S. Dist. LEXIS 24831 at *19 (D. Conn. Mar. 26, 2008).  However, "[v]ague and conclusory allegations in a pleading are insufficient to establish personal jurisdiction." *Id.*

### A.  Jurisdiction Under Connecticut's Long-Arm Statute

Addressing the first part of the jurisdictional analysis, Connecticut General Statutes § 52-59b governs the exercise of personal jurisdiction over nonresident individuals, such as defendants here. Paragraph (a) of that statute provides, in relevant part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent: (1) Transacts any business within the state; [or] . . . (4) owns, uses or possesses any real property situated within the state.

Plaintiff claims that "§ 52-59b vests this Court with personal jurisdiction since both Defendants transacted substantial business within Connecticut and hold property interests in Connecticut." (Pl.'s Mem. Law Opp'n Mot. Dismiss at 6.)  Plaintiff thus appears to assert that this Court has personal jurisdiction over defendants under both § 52-59b(a)(1) and (4).

Considering, first, plaintiff's apparent claim that personal jurisdiction arises under § 52-59b(a)(4), it is readily apparent that such a claim cannot stand.  The only references to real property in the pleadings are that the defendants hold two mortgages on real estate jointly owed by Colon-

Collazo and his wife, that Juan signed a lease for an apartment in Connecticut, and that Juan procured property insurance for the apartment.  Regarding the apartment, defendants asserts and plaintiff does not dispute that the apartment was for the use of their son, who occupied the apartment. Although plaintiff emphasizes the fact that Juan stayed at the apartment for three days during a visit with Colon-Collazo, plaintiff does not cite any law suggesting that the leased apartment thus constitutes real property owned, used, or possessed by defendants.  Nor does plaintiff address whether the holding of a mortgage interest in real estate constitutes the ownership, use, or possession of real property.  Regardless of how these questions would be answered, however, it is clear that plaintiff's cause of action against defendants did not "arise from" defendants' holding of the mortgages, Juan's leasing of the apartment, or Juan's procuring property insurance on the apartment, as required by § 52-59b(a)(4).  Accordingly, this Court concludes that it does not have personal jurisdiction over defendants under that provision.

The Court next considers plaintiff's apparent claim that personal jurisdiction exists under § 52-59b(a)(1).  In determining whether a cause of action arose from the defendant's transaction of business within Connecticut, the Court does not apply a rigid formula but rather balances "considerations of public policy, common sense, and the chronology and geography of the relevant factors." *Halo Tech Holdings, Inc.*, 2008 U.S. Dist LEXIS 24831 at*26.  Among the relevant factors which guide the Court's inquiry are (1) "whether the defendant entered into an ongoing contractual relationship with a Connecticut-based plaintiff;" (2) "whether the contract was negotiated in Connecticut;" (3) "whether, after executing a contract with the defendant, the defendant visited Connecticut to meet with the plaintiff or communicated with the plaintiff as part of the contractual relationship;" (4) and "whether the contract contains a Connecticut choice-of-law provision." *Id.* at

25-26; *see also Agency Rent A Car Sys., Inc. V. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir.

1996).[3]  "No single factor is dispositive and other factors may also be considered."  *Halo Tech*

*Holdings, Inc. v. Cooper*, 2008 U.S. Dist LEXIS 24831 at 26.  The inquiry focuses on "the nature

and quality of the contacts with Connecticut in connection with the matter in suit, rather than the

number of Connecticut contacts."  *Id.* at 26-27 (internal quotation marks omitted).  Indeed, a "single

purposeful business transaction" can give rise to jurisdiction.  *See RJM Aviation Assocs. v. GP*

*Aviation Servs., LLC*, No. 3:06-CV-2007, 2008 U.S. Dist. LEXIS 24447, *9 (D. Conn. Mar. 28,

2008).  "A purposeful business transaction is one in which the defendant has engaged in some form

of affirmative conduct allowing or promoting the transaction of business within the forum state."

*Health Communs., Inc. v. Chicken Soup for the Soul Publ'g, LLC*, No. X05CV084014539S, 2009

Conn. Super. LEXIS 337, *71 (Conn. Super. Ct. Feb. 6, 2009)

Applying the factors listed above to the facts of the instant case, the Court finds that they

support the exercise of personal jurisdiction over defendants.  Both defendants entered into a

contractual relationship with a Connecticut-based plaintiff when they signed the guarantee clause

attached to their son's retainer agreement with Nusbaum & Parrino.  *See* Black's Law Dictionary 634

(5th ed. 1979) ("A guaranty is a contract that some particular thing shall be done exactly as it is

agreed to be done, whether it is to be done by one person or another, and whether there be a prior or

principal contractor or not."); *Days Inns of Am., Inc. v. P&N Enters.*, No. 3:97-CV-01374, 2006 U.S.

Dist. LEXIS 71815, *9 (D. Conn. Sept. 29, 2006) ("a guaranty is a contract").  Notably, this Court

---

[3] Although the Second Circuit was applying New York Civil Practice Law § 302 in *Agency Rent A Car Sys*, the Connecticut Supreme Court has held that interpretations of § 302 are pertinent to understanding § 52-59b given that the Connecticut Legislature used  § 302 as a model for § 52-59b.  *Zartolas v. Nisenfeld*, 184 Conn. 471, 474 (1981).

has explicitly held that the execution of a guarantee " may serve as one basis for a court's finding that a defendant transacted business in Connecticut." *Indymac Mortg. Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222, 233 (D. Conn. 2001).  Although defendants may not have negotiated the terms of the guarantee in Connecticut,[4] after executing it Maria both met with Parrino in Connecticut and communicated with him as part of the contractual relationship.  Specifically, on August 13, 2008, Maria met Parrino at his office to discuss issues related to her son's divorce.  During that meeting, she executed a letter, addressed to Parrino, which stated the following:

> I understand that as of July 31, 2008, your firm is owed $219,385.80 in connection with the legal services that you have provided to my son in connection with his divorce.  I understand that my son has promised to pay your fees from the closing proceeds, if any, from the sale of the marital home.  I understand that I am also responsible to pay your fees in accordance with the agreement dated June 25, 2007 that I signed and by this letter reaffirm my commitment to do so.  Currently, I do not have liquid proceeds to pay you, and I intend to sell whatever assets are necessary that my husband and I own to pay your fees that we currently owe you, and that will arise in connection with your continued representation of Juan in the divorce.
>
> I understand that you have told me that I may speak with an attorney before signing this letter.

(Pl.'s Mem. Opp. Mot. Dismiss Ex. H.)  Before the meeting concluded, Maria paid Parrino for the time he had spent with her.  Later that August, Maria sent an email to Parrino providing him information relevant to, and asking his advice regarding, her son's divorce proceedings.  Finally, the retainer agreement between Colon-Collazo and plaintiff, the terms of which defendants agreed to be bound in signing the guarantee, contains a Connecticut choice-of-law provision.[5]

--------------------------------------------------

[4] Defendants state that they "purportedly signed the Agreement in Puerto Rico."

[5] The provision reads: "We agree that any disputes shall be governed by Connecticut law."  (Pl.'s Application Attach. Ex. A at 6.)  Defendants err in their assertion that "there is no

-7-

Balancing considerations of public policy, common sense, and the chronology and geography of the relevant factors in this case also support the exercise of personal jurisdiction over defendants. It is hardly necessary to note that Connecticut has a strong and legitimate interest in holding nonresidents accountable for the contractual obligations they assume toward Connecticut residents. Moreover, common sense would indicate that an individual who enters into a contractual relationship with a Connecticut business, who agrees that the contract is to be governed by Connecticut law, and who also agrees that any disputes are to be submitted to an arbitrator with the American Arbitration Association who "shall be an active member of the Connecticut Bar Association's Family Law Section" and who "shall maintain offices in Fairfield County" (Pl.'s Application Attach. Ex. A at 4), as defendants here did, reasonably should expect that they might be held to account for their contractual obligations in Connecticut.

The chronology of events in this case is somewhat more favorable to defendants. In plaintiff's memorandum of law in opposition to the motion to dismiss, plaintiff claims that defendants and Colon-Collazo offered to co-sign the retainer agreement to induce plaintiff to undertake the representation of Colon-Collazo. However, the excerpt of a state court hearing transcript that plaintiff cites in support of this fact states only that "[Colon-Collazo] offered to have his parents sign the agreement and to provide me [Parrino] with an assurance that I would be paid, to induce me to represent him." (Pl.'s Mem. Opp. Mot. Dismiss Ex. B at 40.)[6] There is no evidence that *defendants* offered their signatures to induce plaintiff to represent their son. In fact, it is

---

choice of law provision in the subject retainer letter or guaranty." (Def.'s Reply Mem. Supp. Mot. Dismiss. at 13 n.2.)

[6] The transcript excerpt is for a hearing in Connecticut Superior Court on an application by plaintiff for orders of attachment *pendente lite* against Colon-Collazo.

undisputed that neither defendant had any communication with plaintiff until after signing the guarantee. Moreover, it is apparent from the retainer agreement that defendants signed the guarantee clause after the agreement had already been executed by their son and Parrino.[7] It cannot be said, therefore, that defendants' actual signing of the guarantee clause induced plaintiff to represent their son.

All this is only to say, however, that defendants did not directly communicate to plaintiff their willingness to sign a guarantee clause before the retainer was executed. It does not rule out the possibility that defendants' willingness was indirectly conveyed to plaintiff through their son. This would be consistent with Parrino's statement in his affidavit that "[w]ithout defendants' agreement to co-sign the Retainer Agreement, my firm and I would have declined representation of [Colon-Collazo]." Although "conclusory allegations in a pleading are insufficient to establish personal jurisdiction," *Halo Tech Holdings*, 2008 U.S. Dist. LEXIS 24831 at *19, there is some evidence suggesting that defendants willingness to sign the guarantee may have been conveyed to plaintiff. There is the presence of the guarantee clause in the retainer agreement, with a signature line for each defendant. There is the existence of two signature pages to the retainer agreement, one of which was signed by defendants in Puerto Rico just one day after their Collazo-Colon and Parrino signed the other in Connecticut. There is the identical nature of Parrino's signatures on the two pages, indicating that one page is a copy of the other. And there is the fact that the signature page signed by defendants lacks the signature of Colon-Collazo. Taken together, these facts suggest that Parrino

---

[7] Colon-Collazo and Parrino executed the retainer agreement on June 25, 2007. Juan signed the guarantee clause on June 26, 2007. Although no date is given for when Maria signed the guarantee clause, the Court may reasonably infer that she signed it on the same date as her husband.

and Colon-Collazo discussed having defendants guarantee Colon-Collazo's legal fees prior to their meeting to execute the retainer agreement, that plaintiff prepared two signature pages prior to the meeting and sent one of them to defendants in Puerto Rico, and that Parrino executed the retainer agreement with Colon-Collazo on the understanding that defendants had signed or soon would sign the guarantee clause on the signature page that had been sent to them.  If the Court is incorrect in drawing these inferences, defendants may enlighten the Court at a future time.  However, the inferences may be drawn for purposes of this motion to dismiss, where plaintiff need only make a *prima facie* showing that the Court has personal jurisdiction over defendants, *Grand River Enters. Six Nations*, 425 F.3d at 165, and all "doubts are resolved in the plaintiff's favor," *Whitaker v. Am. Telecasting*, Inc., 261 F.3d 196, 208 (2d Cir. 2001).

Moreover, given plaintiff's concern about Colon-Collazo's finances and the shortness of time between the execution of the retainer agreement and of the guarantee, it is a reasonable inference to draw on this motion that the firm did not devote, and would not have devoted, significant effort to the divorce action until defendants signed the guarantee.  It is, therefore, also reasonable to infer on this motion that defendants signed the guarantee to induce plaintiff to begin performance under the retainer agreement.[8]

Finally, the Court considers the geography of the relevant factors.  While the guarantee clause was not signed in Connecticut, it and the rest of the retainer agreement were negotiated in Connecticut, all performance under the retainer agreement was to take place in Connecticut, Maria met with plaintiff in Connecticut and sent communications to Connecticut in furtherance of the

---

[8] Similarly, Maria's execution of the August 13, 2008 letter to Parrino appears to have been intended to induce plaintiff to continue performing under the retainer agreement despite plaintiff's concern over its unpaid legal fees.

contractual relationship, and defendants agreed that Connecticut law should govern any disputes that arose under the retainer agreement.  In light of the foregoing facts and considerations, the Court concludes that plaintiff's cause of action against defendants arose form the latter's transaction of business within Connecticut.

In claiming that this Court lacks jurisdiction over them, defendants rely most heavily on *N.E. Contract Packers v. Beverage Services*, No. 100039, 1992 Conn. Super. LEXIS 1811 (Conn. Super. Ct. June 17, 1992) (unreported) and *Savin v. Ranier*, 898 Fed. 304 (2d Cir. 1990).  In *N.E. Contract Packers*, the Connecticut Superior Court granted a defendant's motion to dismiss a claim against her where the defendant's sole contact with Connecticut was the out-of-state execution of a guarantee to pay sums due to a Connecticut resident.  However, in determining that it lacked personal jurisdiction over the defendant, that court noted that the guarantee, "by its plain language, was to be construed by the law of Florida," and that the defendant's visits to Connecticut "were in his capacity as a corporate officer" and not in his personal capacity as required for the court to have jurisdiction over him as an individual.  *Id.* at 8.  Such is not the case here, where the plain language of the retainer agreement is that all disputes are to be governed by Connecticut law and where Maria visited Connecticut to confer the plaintiff firm in her personal capacity.

*Savin* is also distinguishable from the present case.  In *Savin*, the Second Circuit held that the defendant, a resident of Kentucky, was not subject to personal jurisdiction in Connecticut though he executed a promissory note payable in Connecticut in exchange for one share in a syndicate that would purchase a thoroughbred stallion.  *Id.* at 307.  In so holding, the Second Circuit said:

> [P]erformance under the syndicate agreement was to take place in New York. . . .  Ranier did not purposefully bargain for Savin's performance in Connecticut of any activity concerning the syndicate.

-11-

> . . . Ranier's only purposeful contact with Connecticut was in obtaining financing for his share of the New York business from a Connecticut resident.

Here, by contrast, all performance under the agreement between plaintiff, defendants, and their son was to be performed in Connecticut. *Savin* is therefore inapposite to the case at bar.

Another case relied on by defendants, *Shemin Nurseries v. The Losco Group*, No. CV91 0121130 S, 1992 Conn. Super. LEXIS 2118 (Conn. Super. July 14, 1992) (unreported), is similarly distinguishable. In *Shemin*, the Connecticut Superior Court cited *Savin* in holding that the defendant, whose only relationship with Connecticut consisted of a guarantee signed in New York to pay sums due to a Connecticut resident for the provision of top soil, was not subject to personal jurisdiction in Connecticut under Conn Gen. Stat. § 52-59b. *Shemin Nurseries*, 1992 Conn. Super. LEXIS 2118 at *6. The court noted that the top soil itself was to be delivered from a site in New York to another site in New York. *Id.* at *3. As stated, here there is more than just a guarantee to pay sums to a plaintiff in Connecticut. Performance was to take place in Connecticut.

The Court finds more persuasive a case cited by plaintiff, which bears greater resemblance to the case at bar. In opposing defendants' motion to dismiss, plaintiff relies heavily on *Haynes Construction Company v. International Fidelity Insurance Company, et al.*, No. 3:03CV1669, 2004 U.S. Dist. LEXIS 12290 (D. Conn. June 23, 2004). The complaint in that case alleged that the individual defendant executed a personal guarantee promising that he would be personally liable for payment on all purchases of materials and services by his company from plaintiff, that plaintiff was induced to enter into a subcontract with defendant's company in part as a result of the guarantee, and that plaintiff would not have subcontracted with defendant's company had defendant not personally guaranteed the amounts advanced. *Id.* at *2-*4. As in the present case, the defendant in *Haynes*

-12-

denied that he executed the guarantee as an inducement for plaintiff to contract and noted that he executed the guarantee outside of Connecticut. *Id*. at *3.

The *Haynes* Court found that the plaintiff had made a *prima facie* showing of the following facts, which the Court had to accept as true for purposes of the motion to dismiss: (1) the defendant executed the personal guarantee in his personal capacity, (2) the defendant executed the personal guarantee for the purpose of inducing plaintiff to enter into the subcontract, (3) the materials, services, and credit plaintiff agreed to provide defendant's company were for a project in Connecticut, and (4) the guarantee called for the application of Connecticut law and expressly contemplated that plaintiff might seek a prejudgment remedy in Connecticut to enforce the guarantee. *Id.* at *6. Accordingly, the court held that the plaintiff had made a *prima facie* showing of personal jurisdiction over the defendant. *Id.* at *8.

Plaintiff here has made a *prima facie* showing of all the facts considered by the *Haynes* Court in concluding that it had jurisdiction over the defendants in that case. Defendants executed the guarantee in their personal capacities, all performance under the retainer agreement was to take place in Connecticut, and the guarantee, via the retainer agreement, called for the application of Connecticut law. Although the present record does not support a finding that defendants' execution of the guarantee was intended to induce plaintiff to sign the retainer agreement with their son, plaintiff has made a *prima facie* showing that defendants agreement to execute the guarantee induced plaintiff into signing the retainer and that defendants actual execution of the guarantee was intended to induce their performance under the retainer agreement.

In determining whether defendants are subject to this Court's jurisdiction under Connecticut's long-arm statute, the Court was careful to consider, as it must, Maria and Juan

separately.  Although the question is closer with respect to Juan, this Court finds that both defendants

are subject to personal jurisdiction in Connecticut under Conn. Gen. Stat. 52-59b(a)(1).

### B.  Due Process

Turning now to the second part of the jurisdictional analysis, this Court must  determine

whether its exercise of jurisdiction over defendants would offend due process.  The Supreme Court

has set the standard for due process, holding that it "requires only that in order to subject a defendant

to a judgment *in personam*, if he be not present within the territory of the forum, he have certain

minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions

of fair play and substantial justice.'"  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

More recently, the Second Circuit has described how courts should analyze jurisdictional due

process issues:

> A court deciding whether it has jurisdiction over an out-of-state defendant under the
> Due Process Clause must evaluate the "quality and nature," *Burger King Corp. v.*
> *Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985), of the
> defendant's contacts with the forum state under a totality of the circumstances test,
> *id.* at 485-86. The crucial question is whether the defendant has "purposefully
> avail[ed] itself of the privilege of conducting activities within the forum State, thus
> invoking the benefits and protections of its laws," *id.* at 475 (quoting *Hanson v.*
> *Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)) (internal
> quotation marks omitted), "such that [the defendant] should reasonably anticipate
> being haled into court there," *id.* at 474 (quoting *World-Wide Volkswagen Corp. v.*
> *Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)) (internal
> quotation marks omitted).

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242-243 (2d Cir. 2007).

After establishing that a defendant purposefully established minimum contacts with the

forum state, the contacts "may be considered in light of other factors to determine whether the

assertion of personal jurisdiction would comport with 'fair play and substantial justice.' *Burger King*

*Corp. v. Rudzewicz*, 471 U.S. at 476. Such factors include "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 477 (quoting *World-Wide Volkswagen Corp*, 444 U.S. at 292.).

The Court is satisfied the due process is not offended by this Court's exercise of jurisdiction. Regarding "minimum contacts," defendants entered into a contractual relationship with a Connecticut law firm for the purpose of having the firm represent their son in a divorce action, all performance under the contract was to take place in Connecticut, and the contract explicitly invokes the benefits and protections of Connecticut law via its choice-of-law provision. Moreover, defendants agreed that any disputes would be submitted to an arbitrator with the American Arbitration Association who maintains offices in Fairfield County, Connecticut, and indeed, an arbitration between plaintiff and defendants is ongoing in Connecticut. Finally, Maria sent communications to plaintiff in Connecticut and, even more significantly, met with Parrino at the firm's office in Connecticut regarding her obligations under the guarantee.

These contacts with Connecticut are clearly sufficient to establish this Court's jurisdiction over Maria without offending constitutional due process. Juan is entitled to separate consideration, and again, the question with respect to him is closer. However, he signed the same promise to pay the plaintiff firm's fees. Moreover, it is apparent from Maria's August 13, 2008 letter to Parrino, signed while she met with him in Connecticut, that she was speaking for herself and her husband both. The letter reads in part: "I intend to sell whatever assets are necessary *that my husband and I own* to pay your fees that *we* currently owe you, and that will arise in connection with your

-15-

continued representation of Juan [the son] in the divorce." (Pl.'s Mem. Opp. Mot. Dismiss Ex. H (emphasis added).) One may fairly infer, on this motion, that Maria was authorized to speak for her husband. These are sufficient grounds to find that Juan has the minimum contacts with Connecticut required for this Court to exercise personal jurisdiction over him without offending due process.

Regarding the issue of "fair play and substantial justice," the Court acknowledges that it would place a burden on defendants, who reside in Puerto Rico, to defendant an action in Connecticut. However, the Court observes that defendants have numerous other times traveled to Connecticut. In Maria's second affidavit, she states: "I have visited the United States several times over the last three years with my husband to visit our children and grandchildren. There have been times when we have visited our son Juan [Colon-Collazo] when we have stayed with him." (Maria Aff. ¶ 6.) Moreover, against defendants interests the Court must balance plaintiff's interest in obtaining convenient and effective relief. Although the record reflects that defendants have numerous times traveled to Connecticut, there is no evidence that Parrino or anyone else who might testify for plaintiff has ever visited Puerto Rico. The fact that the arbitration proceeding related to this action is ongoing in Connecticut further suggests that it would be much to plaintiff's convenience to prosecute this action in Connecticut. Next, as noted above, Connecticut unquestionably has an interest in holding nonresidents accountable for the contractual obligations they assume toward Connecticut residents.

The interstate judicial system's interest in the efficient administration of justice also counsels in favor of this Court exercising personal jurisdiction over defendants. In evaluating this factor, "courts generally consider where witnesses and evidence are likely to be located." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574 (2d Cir. 1996). Here, two likely witnesses, Juan

and Maria, are located in Puerto Rico, and two others, Parrino and Colon-Collazo, are located in Connecticut.  The evidence in this case is also likely to be split between the two jurisdictions. However, if the evidence is more likely to be in one of these places, this Court thinks it more likely to be with the firm in Connecticut. Furthermore, the property plaintiff thus far seeks to attach is located in Connecticut and the arbitration proceeding is ongoing in that state.  Given these facts, the efficient administration of justice will be better served by this action proceeding in Connecticut.

Lastly, no fundamental substantive social policy counsels toward this action proceeding in one of jurisdictions at issue versus the other.

The balance of factors considered above establishes that this Court's assertion of personal jurisdiction over defendants would comport with fair play and substantial justice.  Accordingly, and in light of all the considerations addressed by the Court in this memorandum opinion and order, the Court concludes that it has personal jurisdiction over defendants.  Defendant's motion to dismiss is therefore DENIED.

It is SO ORDERED.

Dated: New Haven, Connecticut
         April 29, 2009


_____/s/ Charles S. Haight, Jr._____
Charles S. Haight, Jr.
Senior United States District Judge